IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID HATCHIGIAN

      **Plaintiff,**

v.

MATTHEWS PAOLI FORD
100 W. Lancaster Avenue
Paoli, PA 19301

And

FORD MOTOR COMPANY
P.O. Box 5248 MD-45-B
Dearborn, MI 48121

      **Defendants.**

CIVIL ACTION NO. _____

JURY TRIAL DEMANDED

## VERIFIED COMPLAINT

NOW COMES, David Hatchigian (hereinafter "Plaintiff"), complaining of Defendants Matthews Paoli Ford and Ford Motor Company ("Defendants"), and for a cause of action would show this Honorable Court herein as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 (a) in that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(a) in that a substantial part of the events or omissions giving rise to Plaintiffs claims and request for declaratory and injunctive relief occurred in this judicial district. Additionally, Defendant FORD MOTOR COMPANY previously consented to remove to the Eastern District of Pennsylvania an unrelated case arising from the same Parts warranty based upon Federal Question Jurisdiction. [Ex. 34, (Ford's Consent to Removal in David Hatchigian v. Robin Ford, (Removed from Court of Common Pleas of Philadelphia County, Pa. April Term, 2021, No. 210303160)]

1

## PARTIES

1. Plaintiff Joan Randazzo is a disabled Senior Citizen and resident of Delaware County, Pa. She is the owner of the vehicle at issue.

2. Plaintiff David Hatchigian is a Senior Citizen and resident of Delaware County, Pa..

3. Defendant MATTHEW PAOLI FORD operates in the state of Pennsylvania with an office located at 100 W. Lancaster Avenue Paoli, PA 19301. (Hereinafter "Defendant MPF")

4. Defendant FORD MOTOR COMPANY does business in Pennsylvania, with its customer service division located in Dearborn, MI.

## FACTS COMMON TO ALL COUNTS

5. Plaintiff Hatchigian opened a wholesale account with MPF in 1990.

6. On or about June 10, 2019 Mr. Hatchigian purchased seven hundred and forty four dollars ($744.00) in parts from MPF including one H. D. Radiator # 6C2Z8005B. The parts were guaranteed for two years and labor to remove and install. See Ex. 13,14,15, .

7. Defendant Ford Motor Company offers a two (2)-year warranty on parts and labor. (Ex.'s 13, 14, 15) (hereinafter "Parts Warranty")

8. The Parts Warranty provides for labor reimbursement for the replacement of defective automotive parts. See Id., "SERVICE PARTS WARRANTY SUMMARY: Parts Sold Over the Counter: LABOR REIMBURSEMENT".

9. Plaintiffs relied on the coverage of Ford's labor reimbursement warranty when purchasing the Parts Warranty and later when purchasing Ford parts.

10. Plaintiffs relied on the coverage of Ford's labor reimbursement warranty when purchasing Ford parts from Defendants Village Ford.

11. Plaintiff repaired the vehicle by replacing the defective Ford parts with new parts purchased from Fred Beans, a different Ford dealership.

12. The amount of Two hundred and thirty-two dollars ($232.00) was invoiced to warrantor Ford Motor Company to indemnify the replacement performed by Plaintiff. See Ex.'s 1-12, 18, 20-24

13. Plaintiffs submitted Hatchigian's repair order and invoice on business letterhead and submitted it for reimbursement on March 31, 2021.  See Id.

14. MPF belatedly disclosed that only verified shops and repair facilities could perform the replacement under the warranty.  See Ex. 16 and Ex. 26.

15. As the over-the-counter parts warranty contained no such exclusion/exemption, Plaintiffs resubmitted their invoice on March 31, 2021, April 19, 2021 and May 21, 2021.

16. Plaintiff Hatchigian's Tax I.D. requested as a further predicate for submitting the invoice for labor to replace the defective parts to Ford Motor Company.

17. Plaintiffs are not automotive reconditioners or Fleet installers by trade and thus did not have this information and were still under the impression they were covered by the labor reimbursement warranty they were sold.  MPF's unanticipated refusal to submit their authorized rebate caused them to contact Ford Motor Company directly as to their radiator purchase from Fred Beans. Ex. 16.

18. When approving the parts purchase from Ford dealer Fred Beans, Defendant Ford Motor Company did not request or require any further itemization, repair times or hourly rate quotes,

19. Warrantor Ford did not request further certification of the repair and did not assert that the replacement failed to qualify for reimbursement due to self-installation.

20. Based on Ford's recommendations for the rebate, the other Ford dealership was authorized to supply the replacement radiator under warranty, leaving no doubt that the defective radiator was a covered item. See Ex.'s 13-15.

21. Plaintiff then filed a 1-count complaint against the Defendants in Philadelphia County Municipal Court [Statement of Claim No. 21-08.04-3223] seeking $305.00 in damages, plus Plaintiff's court costs.

22. Once Ford was named as a party defendant in the Municipal Court lawsuit, its counsel suddenly claimed that the credit did not qualify "under the warranty program for labor." [See Ex. J (Municipal Court Hearing Notes at Pages 22, line 22 to 23, line 3)] The hearing attorney representing MPF did not present any proof whatsoever to preclude second dealership's inspection or the terms of Ford's replacement authorization. It is further alleged on information and belief this is the fifth time that Defendant Ford was sued for the fatal manufacturing defect in the subject radiator.

23. In September 2021, lead counsel James Peterson agreed with Plaintiff that this case should be heard in Federal rather than in Pennsylvania state court. Upon information and belief, this Ford part was the subject of product liability litigation in prior lawsuits. Ex. 34.

## CAUSES OF ACTION

### COUNT ONE- BREACH OF WARRANTY
### (All Defendants)

24. The allegations of the above paragraphs are incorporated herein as if re- alleged in full.

25. Defendants wrongfully refused to reimburse Plaintiffs for necessary labor and replacement parts or pay for replacement labor pursuant to warranty rebates: in March 2021,

4

Hatchigian found that the radiator was leaking and immediately contacted John McEleney who had been helpful in the past and advised of the radiator leak.

26. Employee John McEleney explained that the radiator was on back order from Ford and it was unknown when it would be available.

27. Plaintiff located the radiator from Fred Beans Ford and recontacted John McEleney at MPF to tell him the part was available from Fred Beans.

28. According to John McEleney the part had to come directly from Ford Motor Company, so Plaintiff called 1-800-565-3673 on March 29, 2021 and spoke with Ford Motor Company's Ronald Rapalit .

29. Plaintiff asked Mr. Rapalit if he could get the radiator from Fred Beans. Plaintiff was put on hold and later told to call Christy Rumor to arrange the parts exchange. See Ex. 8-A. @3-29-2021

30. After finally receiving the replacement radiator, Hatchigian submitted to Ms. Rumor an invoice for uninstallation of the defective radiator plus labor to install the Devon Supper Radiator obtained through Fred Beans. See Ex. 10.

31. The invoice was for 2.2 hours, for a total of $232.00., based on the tables listed in Ford Motor Company's service labor time standard manual. Ms. Rumor then instructed Plaintiff to submit the invoice to the purchasing dealership. See Ex. 9.

32. On March 31, 2021, Hatchigian submitted the same $232.00 invoice to John McEleney at MPF, in accordance with the terms of the Ford Motor Company Parts Warranty. . John McEleney sent an email to Hatchigian on April 5, 2021 regarding further documentations necessary for reimbursement of the $232.00`11. All additional documentation requested was thereafter supplied by Plaintiff on April 19, 2021. See Ex. 10-12, 18, 21-24

33. However, on April 21, 2021, John replied seeking the same documents, so Mr. Hatchigian re-sent all of the documentation a third time. On May 25, 2021, Hatchigian received a voice message and responded to the voice message on May 27, 2021.

34. The same day (May 27) John sent a letter of intent stating he refused to submit the application for reimbursement from anyone other than a verified shop. According to MPF's employee's letter, maker Ford did not consider applying the credit unless and until it could be verified that a legitimate repair facility performed the part replacement labor. Defendant MPF wrongfully refused to submit the invoice to warrantor Ford Motor Company. See Ex. Ex. 16.

35. Plaintiffs contacted Ford directly by phone and email on June 14, June 30 and July 7, 2021, with no response. See Ex. 31-33

36. As a participant in Defendants' parts and services distribution chain MPF was contractually obligated to honor the terms and conditions of Ford's remedy after the purchased parts failed and Plaintiffs performed the contracted for repairs.

37. Wherefore, Plaintiffs seek the entry of a judgment against Defendant MATTHEW PAOLI FORD in the sum certain of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT TWO (FRAUDULENT INDUCEMENT)

### [All Defendants]

38. The allegations of the above paragraphs are incorporated herein as if re- alleged in full.

39. The breaches of the implied and express warranties of automotive parts and services under state law, the alleged wrongful refusal to reimburse for necessary labor and replacement parts and failure to make payment for labor pursuant to warranty rebates, and Defendants' bad

faith inducement of the warranty sale were all foreseeable in view of the ambiguity in the automotive parts and services warranty.

40. Defendants fraudulently induced the purchase of the warranty in bad faith, absent any intention of honoring the implied scope of extended warranty coverage with respect to defective parts. See Ex. B; see also Ex. C [See Philadelphia Court of Common Pleas Case No. 210303160; see also SC-21-08-04-3223 and SC-12-04-12-4230]

41. The sale of the ambiguous warranty was bargained for contemporaneously with Plaintiffs' vehicle purchase.

42. When marketing the warranty, Defendants had no intention of paying for labor performed under the warranty and authorized rebates.

43. Having induced Plaintiffs' purchase of the Extended Warranty, Defendants have wrongfully refused to enforce the implied and express warranties contained in the Extended Warranty and wrongfully refused to reimburse necessary labor and replacement parts and intentionally failed to pay for indemnified replacement under the warranty work, entitling Plaintiffs to damages and also failing to conform with Pennsylvania Code, Title 37 - LAW, Part V - Bureau of Consumer Protection, Chapter 301 - Automotive Industry Trade Practices Section 301.3.

## COUNT THREE (BREACH OF CONTRACT)
### [Defendant MATTHEW PAOLI FORD)

44. The allegations of the above paragraphs are incorporated herein as if re-alleged in full.

45. Defendants pledged to provide (and Plaintiffs formed a reasonable contractual expectation they would receive) a reimbursement credits for installation and uninstallation work performed to replace defective parts.

46. Mr. Hatchigian's wholesale account with MPF was established in 1990.

47. On or about June 10, 2019 Mr. Hatchigian purchased seven hundred and forty four dollars ($744.00) in parts from MPF including one H.D. Radiator # 6C2Z 8005 B assembly. The parts were guaranteed for two years and labor to remove and install. See Ex. 13,14,15,.

48. A contract for parts and services arose between Plaintiff Hatchigian and Defendant MPF for the parts and services hereinabove described.

49. MPF intentionally or negligently breached material terms of the wholesale contract with Plaintiffs. See Ex. 4-7.

50. Plaintiffs were damaged as a proximate result of MPF's conduct in breach of its agreement with Plaintiffs.

51. Wherefore, Plaintiffs respectfully request that this Court enter judgment against Defendant MPF for Seventy five thousand dollars ($75,000.00) and any further amounts allowable under the applicable law with interest, attorneys' fees, expert fees and costs of suit.

### **COUNT FOUR (VIOLATION OF MAGNUSON-MOSS WARRANTY ACT)**
### **(All Defendants)**

52. The allegations of the above paragraphs are incorporated herein as if re- alleged in full.

53. The Magnuson-Moss Warranty Act [15 U.S.C. §§ 15 U.S.C. § 2301 et seq.] is a consumer protection regime supplementing state warranty law to provide a cause of action for

breach of warranty. 15 U.S.C. §2310(d)(1), imposing federal limitations upon disclaimers to consumers, even when a seller or manufacturer properly allocates the risk of product defects.

54. Defendants marketed the warranty to vehicle purchasers seeking to avoid the high cost of a future parts replacement.

55. Plaintiffs relied on the existence of the reimbursement warranty when purchasing their vehicle which expressly provides for labor reimbursement. [See Ex. 13-15, "SERVICE PARTS WARRANTY SUMMARY: Parts Sold Over the Counter: LABOR REIMBURSEMENT"] and Plaintiffs' evidence will support the allegation as to Defendants' breaches of implied and express warranties of automotive parts and services pursuant to state law, Defendants' wrongful refusal to reimburse for necessary labor and replacement parts, Defendants' failure to make payment for warranty work and authorized rebates, and Defendants' bad faith inducement of the warranty sale.

56. Ex. 13-15, does not define and/or is ambiguous the meaning of the term "installer".

57. Based on the contents of the warranty terms and the affirmations, promises, and/or service contracts pledged in Ex. 13-15 is a prohibited "tie-in sales" provision as enforced by Defendant MPF, requiring Plaintiffs as purchasers of warranted parts and services to purchase parts and services from a particular parts/services supplier for use with the warranted parts and services in order to be eligible to receive a remedy under the alleged warranties.

58. Plaintiffs have both suffered damages as a direct or proximate result of the ambiguities of the cited warranty language regarding purchaser indemnification.

59. Defendants' affirmations and representations regarding said language and the warranty coverage provided were also ambiguous.

60. The automotive parts at issue are "consumer products" within the meaning of 15 U.S.C. § 2301.

61. Plaintiffs are "consumers" within the meaning of 15 U.S.C. § 2301(3).

62. Pursuant to the Act, Defendants are "suppliers" of the consumer products to consumers and "warrantors" within the meaning of 15 U.S.C. § 2301(4).

63. Pursuant to 15 U.S.C. § 2301 (8) The term "service contract" means a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product.

64. Pursuant to15 U.S.C. §2310(d)(l), Plaintiff is entitled to bring suit for their damages and other legal and equitable relief.

65. Lack of privity is not a defense to Defendants' conduct.

66. As the Act provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in connection with the commencement and prosecution of lawsuits thereunder, unless the Court in its discretion determines that such an award would be inappropriate, Plaintiffs intend to seek an award of their reasonable attorneys' fees and all court costs as a prevailing consumer at the conclusion of this action pursuant to 15 U.S.C. §2310(d)(2).

## COUNT FIVE- UNJUST ENRICHMENT

### [All Defendants]

### (Pled in the alternative to Contract Claims)

67. The allegations of the above paragraphs are incorporated herein as if re- alleged in full.

68. Plaintiffs conferred a benefit upon Defendants by paying the purchase price for MPF's wholesale contract and the Ford parts warranty and replacing the defective parts in accordance with the warranty.

69. Under the circumstances alleged it would be inequitable for Defendants to retain the benefit absent refunding all or part of the value thereof.

70. Defendants in fact have retained the benefit conferred on them despite the failure to perform their contracts with Plaintiffs.

71. Wherefore, Plaintiffs are entitled to equitable damages including the pro se equivalent of reasonable attorneys' fees and all court costs as prevailing consumers at the conclusion of this action pursuant to 15 U.S.C. §2310(d)(2).

### COUNT SIX (VIOLATION OF ARTICLE 2, U.C.C.)

### [All Defendants]

72. The allegations of the above paragraphs are incorporated herein as if re- alleged in full.

73. The above facts state a claim for breach of warranty of fitness for a particular purpose under the Sales Article of the Uniform Commercial Code (U.C.C.).

74. Including its warranty provisions, the article deals with "sales," "contracts for sale," "sellers" and "buyers."

75. Art. 2 applies to the radiator purchase and the sale is governed by the warranty provisions of the U.C.C. (13 Pa. C.S. § 2315 et seq.)

76. "Sale" is defined as "the passing of title from the seller to the buyer at a price," 13 Pa. C.S.A. § 21 06(a).

77. This case involves "transactions in goods." 13 Pa. C.S.A. § 2102 because the radiator and parts were sold to Plaintiffs and would be returned to the seller upon termination of the agreement, thus Article 2/Chapter 21 applies to the sale. 13 Pa. C.S.A. § 2102.

78. "Goods" are defined as "all things ... which are movable at the time of identification to the contract for sale other than money in which the price is to be paid, investment securities ... and things in actions." 13 Pa. C.S.A. § 2105.

79. Defendants herein each violated Article 2 by failing to honor the terms of the Warranties, where the contracts with Plaintiff Hatchigian are contracts for "sales of goods" to which Article 2 applies in full. Requiring plaintiffs to spend substantial sums to make repairs to their vehicle as Midas deems appropriate was to deprive them of the substantial benefit of the parts and services warranty MPF sold to them. As such the extended warranty as interpreted by Defendants fails of its essential purpose and violates U.C.C. § 2-719(2).

## COUNT SEVEN (VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW ("UTPCPL"))

**[All Defendants]**

80. The allegations of the above paragraphs are incorporated herein as if re- alleged in full. This count is pled separately from Plaintiffs' contractual counts.

81. The UTPCPL authorizes the Court, in its discretion, to award up to three (3) times the actual damages sustained for violations.

82. Among other provisions of the UTPCPL, Defendants have violated U.C.C. § 2-719(2) (contractual modification or limitation of remedy)

83. Plaintiffs are "Persons" as defined by 73 P.S. §201-2(2), and were induced to purchase the Ford parts and services primarily for personal use for their ordinary use in

reasonable reliance on Defendants' warranties as alleged herein. They were induced to incur the cost of replacement but not advised of any exemptions or exclusions for redemption of their replacement expenses for the at issue defective Ford parts.

84. Defendant's wrongful refusal to apply the at-issue rebate is a state law breach of warranty and a deceptive business practice under the statute.

85. Wherefore, Plaintiffs now seek reliance and compensatory statutory damages including three (3) times the actual damages sustained for each of Defendants' violations of Pennsylvania's consumer protection law.

## DAMAGES

86. Plaintiffs respectfully request that judgment be entered against each Defendant in the sum certain of Seventy-five thousand dollars ($75,000) for damages arising from Defendants' individual and combined conduct, or an amount in direct, consequential and compensatory damages to be determined at trial. In addition, Plaintiffs seek an Order directing payment of:

   a. Statutory damages for Defendants' warranties, false affirmations to Plaintiffs, deceptive practices, together with prejudgment interest thereon;

   b. Exemplary/punitive damages as available to Plaintiffs at law or equity, for willful acts done by Defendants with fraud, malice, and/or gross negligence;

   c. Plaintiffs' costs of suit, statutory fees and the pro se equivalent of attorneys' fees as provided by law; and

   d. Such other and further relief as this Court may deem appropriate or for the SUM CERTAIN OF SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00)

## ATTORNEYS' FEES AND COSTS

87. Prose plaintiffs DAVID HATCHIGIAN and JOAN RANDAZZO have now incurred and will incur court costs and filing, litigation support and legal research fees which are the pro se equivalent of counsel fees to a pro se litigant. As a result, prose Plaintiffs are entitled to recover their statutory costs and reasonable and necessary attorneys' fees, as are equitable and just, inclusive of those amounts incurred as a result of trial, prosecuting or defending an appeal up to the Supreme Court and all costs of court.

### ENDORSEMENT FOR JURY DEMAND

88. Plaintiffs demand a trial by jury of all issues so triable.

**October 19, 2021**

**Respectfully Submitted**

*David Hatchigian*

_____

**DAVID HATCHIGIAN**
**PRO SE PLAINTIFF**

## VERIFICATION

I David Hatchigian, plaintiff, verify that the facts set forth in the foregoing are true and correct to the best of my information, knowledge, and belief.

I understand that the statements contained herein are subject to the Penalties of 18 Pa. C.S.A., §4909 relating to unsworn falsification to authorities.

*David Hatchigian*
_____
David Hatchigian

October 20, 2021

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
DAVID HATCHIGIAN

## DEFENDANTS
MATTHEWS, PAOLI, FORD MOTOR CO.

(b) County of Residence of First Listed Plaintiff  **DELAWARE**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  **MICHIGIAN**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
PRO-SE DAVID HATCHIGIAN

Attorneys *(If Known)*
JAMES P. PETERSON ESQUIRE

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [x] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [x] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
MAGNUSON-MOSS WARRANTY ACT 15 U.S.C. $$ 15 U.SW.C. $2301
Brief description of cause:
BREACH OF CONTRACT

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ $75K

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE  JUDGE CHAD KENNEY
DOCKET NUMBER  2:21-CV-03416

DATE  OCTOBER 19, 2021
SIGNATURE OF ATTORNEY OF RECORD
DAVID HATCHIGIAN

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE